**The B.F. GOODRICH COMPANY, Relator,**

v.

**The Honorable Lamar McCORKLE, Judge 133rd District Court, Harris County, Texas, Respondent.**

No. A14–93–00772–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 18, 1993.[*]

---

[*] Motion for rehearing granted, writ of mandamus conditionally granted, opinion of October 23, 1993, withdrawn and substitute opinion filed.

Harry M. Reasoner, Scott J. Atlas, David M. Bond, James A. Reeder, Jr., Manuel Lopez, Houston, for relator.

Charles G. King, Doug Sigel, James P. Pennington, Houston, for respondent.

Before J. CURTISS BROWN, C.J., and ELLIS and LEE, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

Relator seeks a Writ of Mandamus directing respondent to compel arbitration pursuant to a contract between relator and Westlake Monomers Corporation (Westlake), the

real party in interest. We conditionally grant the relief sought.

Pursuant to a Federal Trade Commission order, B.F. Goodrich sold a ethylene dichloride and vinyl chloride monomer plant in Calvert City, Kentucky to Westlake Monomers Corporation (Westlake). Included as part of the deal was a right of first refusal given to Westlake for the ethylene and chlorine assets and related property located at the Calvert City complex that provided services to the plant. Subsequently, Westlake contends B.F. Goodrich sold a portion of the ethylene and chlorine assets and related property to Geon Company, a wholly owned subsidiary of B.F. Goodrich, as a predicate to selling fifty percent of the common stock of Geon in a public offering. Westlake argues this sale triggered its right of first refusal. Westlake sued to enjoin the sale and for specific performance in accordance with the right of first refusal.

The controversy before us involves a dispute as to whether an arbitration provision in the Amended and Restated Master Conveyance Agreement, as amended on March 1, 1990, (Master Agreement) applies to the Right of First Refusal agreement (RFR Agreement). The Master Agreement contains an arbitration clause applicable to all disputes arising between B.F. Goodrich and Westlake. However, the RFR Agreement does not contain a dispute resolution provision. Once suit was filed, B.F. Goodrich motioned to have the controversy arbitrated. The Honorable Judge Lamar McCorkle denied the motion. B.F. Goodrich seeks relief by mandamus to compel Judge McCorkle to order the controversy arbitrated in accordance with the Master Agreement.

█ The Federal Arbitration Act, 9 U.S.C. §§ 1–16 (1970 & Supp.1993) (the Federal Act), controls the disposition of this case. The Texas Supreme Court has held that the Federal Act applies to all suits in state court when the dispute arises from a contract involving commerce. *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269–70 (Tex.1992). "The primary purpose of the Federal Act is to require the courts to compel arbitration when the parties have so provided in their contract." *Id.* at 271. As a matter of federal law, when the dispute involves the validity of an arbitration provision, any doubts are to be resolved in favor of arbitration whether the problem is the construction of the contract or an allegation of waiver, delay, or a like defense to arbitrability. *Moses H. Cone Memorial Hosp. v. Mercury Const.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983). Mandamus is a proper remedy upon a finding that a party has been wrongfully denied the benefits of its agreement to arbitrate. *Id.*

█ The Master Agreement, in paragraph 8.5, contains an agreement to arbitrate "any dispute or disagreement between the parties." Paragraph 8.5 also states arbitration will not be used when there is a dispute resolution provision "contained in any other agreement entered into in connection with the undertakings contained in this agreement, including, ... those contained in ... [the] Right of First Refusal Agreement." As a general principle of contract law, "separate agreements executed contemporaneously by the same parties, for the same purposes, and as part of the same transaction, are to be construed together." *Neal v. Hardee's Food Systems, Inc.*, 918 F.2d 34, 37 (5th Cir.1990). As the RFR Agreement does not contain a provision governing dispute resolution, it is apparent, from the language of the Master Agreement, that the RFR Agreement is subject to arbitration.

Westlake, the real party in interest, contends that there was not an agreement to arbitrate disputes arising from the RFR Agreement. Westlake maintains the arbitration clause in the Master Agreement is inapplicable because the RFR Agreement is a separate agreement. Westlake bases its assertion on the fact the RFR Agreement contains an entireties clause. The entireties clause, according to Westlake, demonstrates the intent of the parties to have the contracts separately construed. However, other language in the RFR Agreement indicates an intent that the contracts were to be interpreted together. The first page of the RFR Agreement states that it "is entered into pursuant to, and as an integral part of," the Master Agreement. This language, as well as the language in paragraph 8.5 of the Mas-

ter Agreement providing the exception to arbitration provision, which specifically references the RFR Agreement, lead us to conclude that the contracts were intended to be read together.

Alternatively, Westlake argues that the exception to arbitration, in paragraph 8.5, requires the RFR Agreement to explicitly incorporate the arbitration clause of the Master Agreement for it to be binding. In support of its contention, Westlake provides examples from the various transaction contracts that explicitly incorporate paragraph 8.5 as well as others that provide alternatives to arbitration. Westlake contends that the absence of a dispute resolution provision in the RFR Agreement implicitly grants a right to enforce the contract in court.

Westlake cites no authority for this proposition and it assumes that the contracts were intended to be read separately. As we have already determined that the contracts are to be read together, we also find Westlake's alternate argument invalid. If Westlake had intended the RFR Agreement not to be subject to arbitration, it could have said so in the contract. Such a provision was included in the Oxychlorination and Catoxid Catalyst Supply Agreement and in the Option Agreement.

■ Assuming that we did not agree with its interpretation of the contract, Westlake requests that we consider the testimony of Dr. Louis Ross, or instruct Judge McCorkle to do so, in construing the contract. Westlake maintains Dr. Ross's testimony will show that the parties did not intend to arbitrate the RFR Agreement. In construing a written contract the appellate court should give effect to the intentions of the parties as expressed in the instrument. *Stinger v. Stewart & Stevenson Services, Inc.,* 830 S.W.2d 715, 719 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Extrinsic evidence is not admissible unless the contract is ambiguous. *Marriott Corp. v. Azar,* 697 S.W.2d 60, 64 (Tex.App.—El Paso 1985, writ ref'd n.r.e.). A contract is ambiguous when its meaning, after applying the pertinent rules of construction, is genuinely uncertain. *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (1951). We do not

believe the contracts are ambiguous and therefore Dr. Ross's testimony need not be considered.

■ Westlake next argues that relator waived its right to arbitration because it delayed requesting arbitration. In order to show waiver of the right to arbitration, Westlake must show relator had substantially invoked the judicial process causing delay which prejudiced Westlake. *See Storey v. Shearson–American Express,* 928 F.2d 159, 163 (5th Cir.1991). Westlake claims it has incurred substantial expense in enforcing its rights through litigation and that relator made tactical use of the arbitration issue in order to proceed with Geon Company's initial public offering. However, we believe relator did not invoke the judicial process and did not delay in requesting arbitration.

Westlake filed suit and requested a temporary injunction against relator on March 10, 1993. Relator requested arbitration in its answer on April 13, 1993 and filed a motion to compel arbitration on April 28, 1993. We do not find this to be delay significant enough to waive relator's right to arbitration. In addition, the expenses incurred by Westlake were a result of its bringing suit. As we find there was neither a delay nor that relator invoked the judicial process, we need not consider the merit of Westlake's contention that relator tactically used the arbitration issue for delay.

■ Westlake finally argues that mandamus should be denied because relator unreasonably delayed in applying for relief. As with arbitration, Westlake contends relator is tactically using mandamus relief to derail the November 1, 1993 trial setting. The order denying relator's motion to arbitrate was entered on July 23, 1993. Relator filed for mandamus relief on August 25, 1993. Under these circumstances, we do not find this delay enough to waive relator's right to mandamus relief.

We conditionally grant the Petition for Writ of Mandamus. Judge McCorkle should compel arbitration pursuant to the agreement between the parties. A writ will issue

only if the trial court fails to comply with this opinion.